UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
HECTOR COSTE, CHRISTOPHER HUERTAS                       **COMPLAINT**
and RONNY CIPRIAN,

                             Plaintiffs,                       **JURY TRIAL DEMANDED**

                 -against-

THE CITY OF NEW YORK,
DETECTIVE FERNANDO BONILLA SHIELD # 2196,
POLICE OFFICER DANIEL MADDEN
DETECTIVE JAMAL HAIRSTON SHIELD # 203,
DETECTIVE WILLIAM GARCIA,
DETECTIVE ANTHONY CHOW SHIELD # 7025,
POLICE OFFICER SHANNON MYERS SHIELD # 3599
POLICE OFFICER MOHAMMED RIOS SHIELD # 5238
UNIDENTIFIED POLICE OFFICERS and
ONE UNIDENTIFIED SERGEANT
ALL OF NARCOTICS BUREAU MANHATTAN NORTH
all sued in their capacity as individuals,
                             Defendants.
------------------------------------------------------------------------X

       Plaintiffs HECTOR COSTE, CHRISTOPHER HUERTAS and RONNY CIPRIAN, by

their attorney, Fred Lichtmacher of The Law Office of Fred Lichtmacher P.C., complaining of

the defendants herein, respectfully allege as follows:

1.   This civil rights action arises from the violation of the plaintiffs' constitutional rights by

     the defendants, who subjected plaintiffs to violations of their Fourth Amendment rights

     via the use of excessive, unreasonable and unnecessary force; strip searches; false arrests;

     malicious prosecutions of Coste and Huertas; and the denial of a fair trial in violation of

     the due process clause of the Fourteenth Amendment as to all plaintiffs.

2.  The defendants at all times relevant were New York City police officers and state actors acting under color of state law.

## JURISDICTION AND VENUE

3.  Jurisdiction is founded upon the existence of a Federal Question.

4.  This action arises under 42 U.S.C. §1983 and the Fourth Amendment as well as pursuant to the due process clause of the Fourteenth Amendment to the United States Constitution.

5.  Subject matter jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343 (a) (3 & 4).

6.  Pursuant to 28 U.S.C. §1391(a) (1) & (b) (2), venue is proper in the Southern District of New York because events forming the basis of this Complaint occurred in this District.

## PARTIES

7.  At all times relevant, plaintiffs Hector Coste, Christopher Huertas and Ronny Ciprian, were residents of the City and State of New York.

8.  Upon information and belief, at all times hereinafter mentioned, the City of New York (hereinafter, NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.  Upon information and belief, that at all times hereinafter mentioned, NYC, its agents, servants and employees operated, maintained and controlled the New York City Police Department (hereinafter, the NYPD), including all the police officers thereof.

10. At all times relevant, defendants Detective Fernando Bonilla, Police Officer Daniel Madden, Detective Jamal Hairston, Detective William Garcia, Detective Chow, Police Officer Shannon Myers, Police Officer Mohammed Rios, Unidentified Police Officers

and One Unidentified Sergeant were all assigned to the NYPD's Narcotics Bureau Manhattan North.

11. All the individual defendants are sued in their capacity as individuals.

12. This action is commenced within three years of when plaintiffs' causes of action arose.

### STATEMENT OF FACTS

13. On December 12, 2017 at approximately 3:00 pm the plaintiffs were on or near 162nd Street between Broadway and Fort Washington, in Manhattan, New York although they were not all together.

14. Mr. Coste's brother had been involved in an argument with Mr. Huertas and Coste went to meet with Huertas to find out what had happened between the two men.

15. Mr. Coste and Huertas had a discussion during which Coste and Huertas exchanged numbers and Coste gave Huertas a football ticket for his brother who is his friend; no physical confrontation occurred.

**Hector Coste**

16. After the two men went their own ways, Defendant Detective Chow grabbed Coste by his neck and shoulder and threw him against a gate head first, injuring his head, the area beneath his right eye, and his left knee.

17. After Detective Chow violently grabbed Coste he asked him what he had passed to Huertas.

18. At this point Detective Chow had not identified himself as an officer but Mr. Coste noticed a shield hanging around his neck.

19. As Detective Chow spoke further to Mr. Coste he dishonestly reported he saw him pass drugs to Huertas.

20. Coste was ordered to put his hands on the fence and a second defendant, upon information and belief, Detective Hairston, had appeared on the scene.

21. The defendants Detectives Chow and Hairston, took Coste into a fish market on Broadway between 160th and 161st Streets.

22. While inside the fish market, out of sight of the public, the defendants told Coste to empty his pockets, and as he did, Detective Chow threw him violently to the ground, injuring him further, while disingenuously insisting Coste was resisting.

23. While he was on the ground more defendant officers arrived and the defendants put a knee on his neck and they physically abused him further.

24. Coste's arm was twisted painfully behind his back and he was then handcuffed.

25. Coste was handcuffed overly tightly which he complained about continuously until the handcuffs were finally removed later in the 33rd precinct.

26. At the precinct Mr. Coste was questioned about criminal activity in Washington Heights unrelated to the incident.

27. Mr. Coste was strip searched, for no legally justifiable reason in spite of not being in possession of any drugs or paraphernalia, and the defendants attempted to perform a body cavity search which he refused to allow.

28. A few hours after being brought to the 33rd precinct Coste was brought to Central Booking.

29. Coste was falsely charged with Criminal Possession of a Controlled Substance in the Third and Criminal Sale of a Controlled Substance in the Third, both felonies, as he was alleged by the defendants to have possessed and sold heroin, which was a complete fiction.

30. Bail was set for Mr. Coste at $25,000.00.

31. Because Mr. Coste could not initially post bail, he was sent to Riker's Island.

32. While at Riker's Island Mr. Coste received medical treatment for the injuries the defendants inflicted upon him approximately once weekly.

33. Approximately a full month later Coste's brother posted bail Mr. Coste was released.

**Christopher Huertas**

34. After Mr. Huertas departed from his short meeting with Coste he was approached by multiple defendants and arrested.

35. Huertas was falsely charged with Criminal Possession of a Controlled Substance in the Third and Criminal Sale of a Controlled Substance in the Third, as he was alleged by the defendants to possess and sell heroin, which was a complete fiction.

36. Huertas had handcuffs applied uneccesarily tightly and the defendants refused to loosen them despite Huertas' repeated requests causing him to be in pain.

37. Huertas was twice strip searched for no legally justifiable reason.

38. Huertas was involuntarily subjected to an illegal, highly invasive, body cavity search in which nothing was found.

39. Huertas was released shortly after arraignment, however, due to the false charges brought by the defendants he was violated for probation in Florida causing him to needlessly spend approximately 120 days incarcerated.

**Ronny Ciprian**

40. At approximately the same time Coste and Huertas were being arrested, Ronny Ciprian, who was nearby was also accosted by the defendants, physically roughed up, and arrested.

41. Several defendants jumped out of a van, and without identifying themselves as police officers, they ran at Ciprian, grabbed him and threw him forcefully into a gate.

42. Mr. Ciprian was elbowed in the back and handcuffed overly tightly causing him pain.

43. After requesting the handcuffs by loosened approximately six times, a female officer finally loosened the handcuffs, about twenty minutes after they were applied unnecessarily tightly.

44. Ciprian was falsely charged with two felonies, Criminal Possession of a Controlled Substance in the Third and Criminal Sale of a Controlled Substance in the Third as he was alleged by the defendants to have possessed and sold heroin, which was a complete fiction.

45. Caprian was strip searched for no legally justifiable reason.

46. Ciprian was involuntarily subjected to an illegal, highly invasive, body cavity search in which nothing was found.

47. Ciprian spent a little over 2 days in jail before seeing a judge at which point he was informed, in sum and substance, his arrest had been a mistake and the charges against him were dismissed and sealed.

**The Criminal Case Against Coste and Huertas**

48. The three plaintiffs herein were joined in the criminal case against them as co defendants along with one other falsely accused individual.

49. Detective Bonilla, with the assistance of Detective Hairston, swore to false charges in a Criminal Affidavit and several of the defendant/detectives contributed to the false charges being drafted.

50. The grand jury was convened after the charges against Ciprian were dismissed.

51. Defendants, and in particular Detective Bonilla, gave disingenuous testimony to the grand jury facilitating the return of a true bill as to both Coste and Huertas.

52. Additionally the defendants had procured evidence with a fraudulently sworn to affidavit to obtain a subpoena to search all three plaintiffs' phones, which they proceeded to do

53. However, after the grand jury returned a true bill, the Assistant District Attorney assigned to the case, went to the scene and located several tapes of relevant parts of the incidents.

54. On May 21, 2018 the assigned ADA having reviewed video evidence determined the detective/defendants had been dishonest about the circumstances of the arrests and that Detective Bonilla was disingenuous when testifying to the grand jury, and he informed the court he needed approximately one month to draft papers to dismiss the charges as to Coste and Huertas.

55. On July 11, 2018 the false charges against both Coste and Huertas were dismissed outright by the criminal court pursuant to a motion brought by the Office of the New York County District Attorney after both Coste and Huertas had been forced to make multiple court appearances.

56. The arrests of all three plaintiffs and the indictment as to Coste and Huertas were caused by the illegal actions of the defendant/detectives.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO**
**42 U.S.C.§ 1983 AND THE FOURTH AMENDMENT**
**VIA THE USE OF EXCESSIVE**
**AND UNREASONABLE FORCE**

57. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

58. Plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that the plaintiffs were unlawfully subjected to excessive and unreasonable force, by the defendants.

59. By reason of the unlawful use of excessive, unreasonable force, the plaintiffs were harmed physically, they incurred, bruises, possible scarring, loss of bodily function, the need for medical treatment and they were all subjected to physical pain, humiliation, embarrassment, anxiety, various ongoing physical harms, and they were emotionally and otherwise harmed.

60. The defendants intentionally and maliciously applied the plaintiffs' handcuffs too tightly and ignored their repeated requests to have them loosened, causing them further pain, suffering, and injury.

61. By reason of the aforesaid, the plaintiffs have been damaged in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS each, and by reason of the malicious and reckless behavior of the defendants the plaintiffs are entitled to awards of punitive damages, and awards of attorneys' fees are appropriate pursuant to 42 U.S.C. §1988.

**AS AND FOR A SECOND CAUSE OF ACTION BEHALF OF PLAINTIFFS VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT VIA FAILURE TO INTERVENE TO PREVENT THE USE OF EXCESSIVE AND UNREASONABLE FORCE**

62. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

63. Plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that the individual defendants had a reasonable opportunity to intervene to prevent the various uses of excessive force against the plaintiffs, which were ongoing for a sufficient length of time to allow them to intervene, and such use of force was committed in their presence, and they failed to intervene, causing and allowing plaintiffs to be injured further.

64. The excessive force to which the plaintiffs were subjected and which the defendants failed to intervene to prevent was effected by the defendants without authority of law and without necessity to use any force, much less the excessive, unreasonable force they employed and the force employed was without plaintiffs' consent, with malice and with an intent to inflict pain and suffering.

65. As a direct result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution, being more particularly plaintiff's right to be free from the use of excessive and unreasonable force.

66. By reason of the unlawful use of excessive, unreasonable force, the plaintiffs were harmed physically, they incurred, bruises, possible scarring, loss of bodily function, the need for medical treatment and they were all subjected to physical pain, humiliation, embarrassment, anxiety, various ongoing physical harms, and they were emotionally and otherwise harmed.

67. By reason of the aforesaid, the plaintiffs has been damaged in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS each, and by reason of the malicious and reckless behavior of the defendants the plaintiffs are entitled to awards of

punitive damages, and awards of attorneys' fees are appropriate pursuant to 42 U.S.C. §1988.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS
### VIOLATION OF THE FOURTH AMENDMENT AND 42 U.S.C.§ 1983
### VIA FALSE ARREST

68. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

69. The plaintiffs' rights have been violated pursuant to the Fourth Amendment of the United States Constitution made applicable to the states by virtue of the Fourteenth Amendment and brought before this Court pursuant to 42 U.S.C. § 1983, due to their being falsely arrested by the defendants.

70. The plaintiffs were confined by defendants; defendants intended to confine the plaintiffs; plaintiffs were conscious of their confinement; and the plaintiffs did not consent to the confinements which were not otherwise privileged.

71. The defendants generated papers alleging false charges against the plaintiffs to wit heroin possession and the selling of heroin, which they did not witness, and which did not occur.

72. As a direct consequence of defendants' actions, the plaintiffs were deprived of rights, privileges and immunities pursuant to the Fourth Amendment as made applicable to the states via the Fourteenth Amendment of the United States Constitution and more particularly, their right to be free from arrest without probable cause.

73. Among other invasions of their privacy, offenses to their dignity and violations of their rights, the plaintiffs were subjected to being handcuffed, searched, confined, insulted, humiliated, emotionally harmed and embarrassed and they were otherwise harmed.

74. By reason of the aforesaid, the plaintiffs have been damaged and they are entitled to compensatory damages in a sum not less than FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS (each) and punitive damages in amounts to be determined at trial and plaintiffs are entitled to awards of attorneys' fees and costs pursuant to 42 USC §1988.

**AS AND FOR A FOURTH CAUSE OF ACTION BEHALF OF
PLAINTIFF VIOLATION OF THE PLAINTIFFS' RIGHTS
PURSUANT TO 42 U.S.C. § 1983
AND THE FOURTH AMENDMENT
AND THE DUE PROCESS CLAUSE
OF THE FOURTEENTH AMENDMENT
<u>via INVASION OF PRIVACY</u>
<u>DUE TO ILLEGAL STRIP SEARCHES OF THE PLAINTIFFS</u>**

75. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

76. Plaintiffs' rights have been violated under the Fourth Amendment and the due process clause of the Fourteenth Amendment via an invasion of privacy when they were illegally stip searched by the defendants.

77. There was no legitimate law enforcement purpose for the forced non consensual strip searches in light of the fact that the defendants had no reasonable belief that the plaintiffs had committed crimes or that they possessed or sold heroin.

78. Mr. Ciprian and Mr. Huertas were subjected to illegal, unconsented, highly invasive body cavity searches.

79. Mr. Coste managed to avoid the body cavity search but not the strip searched.

80. By reason of the invasion of privacy plaintiffs were embarrassed, humiliated, they suffered anxiety and they were and still are experiencing various emotional harms and plaintiffs were otherwise harmed.

81. By reason of the aforesaid, the plaintiffs has been damaged in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS (each), and by reason of the malicious and reckless behavior of the defendants the plaintiffs are entitled to awards of punitive damages, and an award of attorneys' fees is appropriate pursuant to 42 U.S.C. §1988.

**AS AND FOR AN FIFTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF PLAINTIFF'S FOURTH
AND FOURTEENTH AMENDMENT RIGHTS
VIA DENIAL OF THEIR RIGHT TO A FAIR TRIAL,
i.e., DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS**

82. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

83. The plaintiffs were denied their right to a fair trial i.e., they were subjected to a deprivation of liberty without due process in violation of the Fourth Amendment as well as pursuant to the due process clause of the Fourteenth Amendment by the individual defendants who created false information and provided that information to the District Attorney which was then used in their prosecution.

84. The defendants, particularly Defendants Bonilla and Hairston, consciously lied in generating their felony complaint as well as in generating false statements to obtain search warrants of the plaintiffs' phones.

85. Defendants' actions resulted in the plaintiffs being arrested, handcuffed, being held in custody, being forced to appear in court, caused the plaintiffs to endure fear of being sentenced to jail, they suffered, anxiety, they were defamed in their community, they incurred pecuniary harms and they were were otherwise harmed.

86. By reason of the aforesaid, the plaintiffs have been damaged and they are entitled to compensatory damages in a sum not less than ONE MILLION ($1,000,000.00) DOLLARS (each) and punitive damages in amounts to be determined at trial and plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.


**AS AND FOR AN SIXTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF PLAINTIFF'S FOURTH
AMENDMENT RIGHTS VIA ILLEGAL SEARCHES
OF THEIR CELL PHONES.**


87. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

88. The plaintiffs rights pursuant to the Fourth Amendment were violated by the illegal, unjustified and unconsented searches of their cell phones.

89. Defendants created a false narrative to obtain a search warrant for plaintiffs' phones as was exposed by the ADA who indicated in particular that Detective Bonilla had been disingenuous in describing the incident leading to the plaintiffs' arrests.

90. The defendants, consciously lied in generating their felony complaint as well as in generating false statements to obtain search warrants for the plaintiffs' phones.

91. Defendants' actions resulted in the plaintiffs having their privacy invaded, they suffered, anxiety, and they were were otherwise harmed.

92. By reason of the aforesaid, the plaintiffs have been damaged and they are entitled to compensatory damages in a sum not less than ONE HUNDRED THOUSAND ($100,000.00) DOLLARS (each) and punitive damages in amounts to be determined at trial and plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT NEW YORK CITY i.e., MONELL CLAIM**

93. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

94. Before and after the arrest of plaintiffs, a custom and practice of lawlessness and corruption pervaded NYPD narcotics operations.

95. This custom and practice was first exposed in January of 2008, when four officers from Brooklyn South Narcotics were arrested and charged with criminal offenses.

96. In June 2011, Sgt. William Eiseman pled guilty to fabricating narcotics charges and admitted to training young officers to do the same (Melissa Grace, *NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal*, N.Y. Daily News, June 27, 2011).

97. The on-going custom and practice in making unlawful and fraudulent narcotics arrests was confirmed in October of 2011 in sworn testimony by former NYPD officer Steven Anderson.

98.  On May 29, 2013, P.O. Isaias Alicea was convicted of ten felony counts of filing a false document and one misdemeanor count of official misconduct after falsely claiming that he saw two men conducting a drug deal in West Harlem.

99. In August 2013 former NYPD officer Genaro Morales testified that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013).

100.     In 2015, SDNY Judge Engelmeyer suppressed narcotics evidence because of Bronx P.O. Luis Rios' perjury (Josh Saul, *Lying Cop Costs NYPD Big-Time Bust*, N.Y. Post, May 27, 2015).

101.     In early 2017, Detectives Sasha Cordoba and Kevin Desormeau were indicted in Queens for lying about the circumstances of narcotics arrests.

102.     In October 2017, EDNY Judge Weinstein permitted a *Monell* claim to go forward in a case alleging perjury by narcotics officers, noting that "A reasonable jury may find that this practice is not isolated to a few 'bad' police officers, but is endemic, that NYPD officials are aware this pattern exists and that they have failed to intervene and properly supervise." (*Cordero v. City of New York*, No. 15 CV 3436, 2017 WL 4685544, at *11 (E.D.N.Y. Oct. 17, 2017).)

103.     Upon information and belief, because of the custom and practice of corruption and lawlessness by NYPD narcotics officers, approximately 400 criminal prosecutions had to be dismissed by the Queens County and Kings County District Attorney's Offices.

104.    As a direct result of this custom and practice, defendants in the instant matter felt free to arrest the plaintiffs in the instant matter without probable cause and to manufacture evidence against them.

105.    Both before and after the arrest of the plaintiffs herein, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

106.    The existence of the aforesaid custom and practice may be inferred from:

☐ NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

☐ the directive issued in 2002 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

☐ the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

☐ the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

☐ the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

☐ the information provided by whistle-blower police officer Adil Polanco that commanders relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

☐ the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has His Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

☐ audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes: Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

☐ testimony by P.O. Bryan Rothwell at his departmental trial in January 2014 that police officers in his unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

☐ the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

☐ Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64),

that senior NYPD officials routinely pressured commanders to increase enforcement activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

☐ the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says* , Village Voice, June 7, 2010);

☐ the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*,

http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

☐ a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

☐ testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale because of

pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

☐ the revelation in April 2015 by Anthony Miranda, chairman of the National Latino Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

☐ statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

☐ allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016);

☐ allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016); and

☐ allegations in November 2016 by former P.O. Doreen Debattista that she got flak for not making enough arrests (Victoria Bekiempis, *Cop Slaps NYPD Supervisors With $5.5M*

*Discrimination Suit After Allegedly Forcing Her Into Retirement Due To Gender, Age*, N.Y. Daily News, Nov. 23, 2016).

107.    Upon information and belief, as a direct result of these quotas, defendants in the instant matter felt pressure to arrest the plaintiffs herein without probable cause and to manufacture evidence against them.

108.    The plaintiffs rights pursuant to the Fourth Amendment and Fourteenth Amendment's due process clause were violated due to NYC's *de facto* policy of establishing drug arrest quotas, of not training, supervising, and punishing officers who who make arrests without probable cause in drug cases; who sign false criminal complaints against suspects in drug cases despite a lack of probable cause; who contribute to maliciously porsecuting suspects in drug cases; and in performing unnecessary strip searches and body cavity searches despite not having probable cause to believe the people being strip searched did in fact possess drugs.

109.    The defendants in the instant matter have on numerous occasions conducted illegal body cavity searches without probable cause to believe they had reason to do so and on numerous occasions there were no drugs found on the victims of their illegal searches.

110.    NYC's failure to train, supervise, and discipline when necessary members of the NYPD in the above entitled matters led directly to the violations of plaintiffs' constitutional rights.

111.    The above delineated practices of the NYPD are so permanent and well settled as to constitute a custom or usage with the force of law.

112.    Defendants Bonilla, Madden, and Chow in particular have a history of performing strip searches and even body cavity searches without probable cause and in matters in which they did not find drugs, yet upon information and belief, they were neither punished nor retrained by the NYPD or NYC despite these practices being known to their employers and despite their having been successfully sued for this offense on other occasions.

113.    These practices directly cause plaintiffs' harms.

114.    By reason of the aforesaid, the plaintiffs have been damaged and they are entitled to compensatory damages in a sum of not less than $1,000,000.00 (ONE MILLION DOLLARS (each) and plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.


**WHEREFORE,** plaintiffs respectfully request that judgment be entered as follows:

(A)    Declaratory relief finding that plaintiff's rights under the United States Constitution were violated;

(B)    Compensatory damages to be determined at trial in a sum not less than ONE MILLION ($1,000,000.00) DOLLARS (each);

(C)    By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages against the individual defendants in amounts to be determined at trial;

(D)    An award to plaintiffs of the costs and disbursements herein;

(E)    An award of attorneys' fees pursuant to  42 U.S.C. §1988; and

(F)    Such other and further relief as this Court may deem just and

proper.

Dated: New York, New York
        December 9, 2020

                                    _____/s/_____
                                    Fred Lichtmacher
                                    The Law Office of Fred Lichmacher P.C.
                                    Attorney for Plaintiff
                                    116 west 23rd Street Suite 500
                                    New York, New York 10011
                                    Tel. No. (212) 922-9066


To:    The City of New York
       NYC Corporation Counsel
       100 Church Street
       New York, New York 10007

To:    MOHAMMED RIOS SHIELD # 5238
       19th Precinct Detective Squad
       153 E 67th Street
       New York, NY 10065

To:    DETECTIVE FERNANDO BONILLA SHIELD # 2196,
       POLICE OFFICER DANIEL MADDEN
       DETECTIVE JAMAL HAIRSTON SHIELD # 203,
       DETECTIVE WILLIAM GARCIA,
       DETECTIVE ANTHONY CHOW SHIELD # 7025,
       POLICE OFFICER SHANNON MYERS SHIELD # 3599
       Narcotics Bureau Manhattan North c/o 1 Police Plaza
       New York, NY 10038